Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| JIC BANK INTERNATIONAL, INC.<br><br>Recurrente<br><br>v.<br><br>OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS<br><br>Recurrida | KLRA202500127 | Revisión administrativa procedente de la Oficina del Comisionado de Instituciones Financieras<br><br>Sobre:<br>Denegación de Renovación de Licencia EFI-31 |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Rodríguez Flores, Juez Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 30 junio de 2025.

La parte recurrente, JIC Bank International, Inc. (JIC o parte recurrente), solicita que revoquemos la *Resolución Acogiendo y Resolviendo Moción de Reconsideración*, emitida el 30 de enero de 2025, por la Oficina del Comisionado de Instituciones Financieras (OCIF o parte recurrida). Mediante el referido dictamen, la OCIF declaró No Ha Lugar la solicitud de reconsideración presentada por JIC, respecto al *Notice of Denial of License*, emitido por la OCIF el 20 de diciembre de 2024, en el que denegó la renovación de licencia a JIC para operar como entidad financiera internacional.[1]

El 11 de abril de 2025, la OCIF presentó su *Alegato en Oposición a Recurso de Revisión de Decisión Administrativa.*

Examinados los escritos ante nuestra consideración, y por los fundamentos que expondremos a continuación, confirmamos la resolución recurrida.

---

[1] EFI o por sus siglas en inglés, IFE *(International Financial Entity).*

## I.

El 25 de junio de 2024, JIC presentó *Updated Business Plan for 2024 and 2025* ante la OCIF, en el que expresó lo siguiente:

> On behalf of JIC Bank International Inc. (JIC), I am writing to submit our updated business plan for the years 2024/2025 and going forward. This plan outlines JIC's current and future business objectives as we prepare for relaunch.
>
> **As you are aware, JIC paused operations in the third quarter of 2023. We returned all deposits to our customers and closed all accounts. This business plan details our strategy to resume operations in late 2024 or January 2025, coinciding with the implementation of our new core banking system from FIS.**
>
> [...]

(Énfasis Nuestro).

Asimismo, JIC presentó un *Business Plan* en el que hizo un recuento de la trayectoria de la institución, antes conocida como Instabank International, Inc. (Instabank). En síntesis, consignó que, en o alrededor del 9 de marzo de 2021, la OCIF autorizó el cambio de control sometido por Instabank; adquirido por JIC en o alrededor del 15 de abril de 2021 y que, el 23 de junio de 2021, OCIF emitió licencia a nombre de JIC (License No. IFE-031)[2]. Según expuesto por JIC, ésta pausó operaciones el 1 de noviembre de 2023, por razones de restructuración organizacional y de negocios. Sobre el particular, JIC indicó en su *Business Plan* que había cerrado todas las cuentas de sus clientes y devuelto todos los depósitos a estos durante el tercer y cuarto trimestre de 2023. Señaló que removió a todos sus empleados incluyendo *Chief Financial Officer* (CFO) y *Chief Operating Officer* (COO) durante los periodos antes indicados, y que

---

[2] La fecha de emisión de la referida licencia es del 3 de octubre de 2016 a nombre de Instabank; la segunda fecha de emisión es el 23 de junio de 2021 a favor de JIC.

estaba en búsqueda de nuevos empleados, en cumplimiento con la Ley 273-2012[3] y sus respectivas enmiendas.

El 11 de septiembre de 2024, JIC presentó *Request for extension for Annual License Renewal*. En síntesis, expuso que era una entidad financiera internacional autorizada y licenciada por la OCIF conforme la Ley 273-2012, *supra*, y solicitó una extensión de la fecha de vencimiento para renovar su licencia. A tal efecto, JIC detalló que había cumplido con los documentos requeridos, excepto con la auditoria de cumplimiento *(Compliance Audit)*, la cual esperaban presentar en o antes del 4 de octubre de 2024. No obstante, solicitó una extensión de término para presentarla.

En respuesta, el 1 de octubre de 2024, la OCIF notificó a JIC una carta *(JIC International, Inc. (IFE-31(/ Request for information regarding licence renewal)*[4], en la que confirmó el recibo de la carta y documentos enviados por JIC. La OCIF enumeró y resumió el contenido de los documentos presentados. Seguidamente, la OCIF enumeró la información y documentos adicionales que JIC debía someter antes del 8 de octubre de 2024. Además, detalló los requisitos de ley que JIC incumplió al presentar su solicitud, así como las disposiciones legales que exigen su cumplimiento. Por lo anterior, la OCIF le concedió hasta el 8 de octubre de 2024 para presentar y cumplir con lo requerido. Por último, le apercibió sobre las enmiendas a la Ley 273-2012, *supra,* en virtud de la Ley Núm. 44 del 16 de febrero de 2024[5], la carta circular número CIF-CC-2024-002 del 14 de mayo de 2024 (carta circular) y le recomendó procurar asesoría legal al respecto. También advirtió que, de no cumplir con dichos requisitos, la OCIF se reservaba el derecho de

---

[3] Ley Núm. 273 de 25 de septiembre de 2012, según enmendada, conocida como *Ley Reguladora del Centro Financiero Internacional,* 7 LPRA § 3081 et seq.
[4] *Véase,* apéndice del recurso, págs. 147-154.
[5] Para enmendar los Artículos 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28 y añadir nuevos Artículos 29 y 30 a la Ley Núm. 273 de 2012, Ley Reguladora del Centro Financiero Internacional.

proseguir con todos los remedios establecidos en la Ley 273-2012, *supra,* y demás leyes y reglamentos aplicables.

El 3 de octubre de 2024, JIC entregó la auditoría independiente, y el 8 de octubre de 2024, envió una carta a la OCIF en cumplimiento con lo solicitado. En esta, respondió a los señalamientos hechos por OCIF y acompañó los documentos y declaraciones solicitadas y contestaron los señalamientos sobre los demás requerimientos.

El 20 de diciembre de 2024, la OCIF emitió y notificó vía correo electrónico el *Notice of Denial of License Renewal.*[6] En esta, luego de un recuento del tracto procesal de la solicitud, enumeró la información requerida, la sometida por JIC y su determinación al respecto, sustentada por las disposiciones legales aplicables. En virtud de ello, la OCIF concluyó que JIC violó varias disposiciones de la Ley 273-2012, *supra,* y la carta circular. En su determinación, la OCIF expresó lo siguiente:

> The inconsistencies in the information provided by JIC create serious doubts and raises concerns related to the accuracy and reliability of the information provided by JIC to the Office.

A modo de resumen, la OCIF expuso que JIC incumplió con solicitar autorización para abrir un certificado de depósito en Zenus Bank, el requisito de tener un mínimo de cuatro (4) empleados a tiempo completo, no notificar las contribuciones, no solicitar autorización de la OCIF para la reducción en capital, no notificar sobre el nombramiento del director, ni respecto al nombramiento de director independiente. En vista de lo anterior, la OCIF expresó que las inconsistencias en la información provista por JIC levantaban serias dudas e inquietudes sobre su exactitud y confiabilidad. Al respecto, puntualizó lo siguiente:

> The pattern of violations to Act 273, the inconsistencies in the information provided by JIC to the Office, as

---

[6] Véase, apéndice del recurso, págs. 425-436.

mentioned above, does not command the confidence of the Commissioner nor warrant belief that JIC has operated and will operate fairly, and efficiently pursuant to the purposes of Act 273. **For these reasons, the Office hereby notifies that the renewal of the license for JIC Bank International Inc. has been DENIED, pursuant to Article 6(g)(1), (2), (3), and (7) of Act 273.**

(Énfasis y subrayado en el original)

Así, ante el patrón de violaciones con las disposiciones legales aplicables e inconsistencias en la información provista, la OCIF concluyó que no existía garantía de que JIC operaría de forma justa y eficiente conforme el propósito de la Ley 273-2012, *supra.* Por tanto, le **denegó** a JIC la licencia para operar como entidad financiera internacional.[7]

El 10 de enero de 2025, JIC solicitó prórroga para presentar la solicitud de reconsideración y la OCIF le concedió hasta el 20 de enero de 2025.[8] Así, el 16 de enero de 2025, JIC presentó *Moción de Reconsideración.* En síntesis, arguyó que la **denegatoria** de la licencia para operar fue una medida extrema que no era proporcional a las violaciones alegadas y circunstancias del caso. JIC sostuvo que durante el periodo que cesó operaciones no puso en riesgo a ninguno de sus clientes. Argumentó que, conforme establece el Artículo 17(a) de la Ley 273, *supra,* una licencia expedida bajo el artículo 6 de dicha ley estaba sujeta a ser **revocada, cancelada o suspendida** por el Comisionado, previa notificación y vista, por lo que le asistía tal derecho. Como base para su argumento, JIC expuso que la **denegatoria** de su licencia tuvo el efecto de revocar o suspender la misma, por lo que OCIF debía cumplir con el requisito de notificar y concederle una vista. El 30 de enero de 2025, la OCIF emitió *Resolución Acogiendo y Resolviendo Moción de Reconsideración.* En esta, acogió la solicitud de

---

[7] Por último, la OCIF apercibió a JIC sobre los términos y el procedimiento para solicitar reconsideración a su determinación.

[8] Apéndice del recurso, pág. 437.

reconsideración presentada y consignó las siguientes determinaciones de hecho:

1. El 3 de octubre de 2016 la OCIF emitió a Instabank International LLC-que posteriormente cambió su nombre a JIC Bank International, Inc.-el permiso para comenzar operaciones y la licencia como una entidad financiera internacional bajo la Ley Núm. 273-2012.

2. El 11 de septiembre de 2024, JIC presentó a la OCIF ciertos documentos correspondientes a la renovación anual de su licencia de entidad financiera internacional.

3. El 1 de octubre de 2024, la OCIF emitió una carta dirigida a JIC confirmando el recibo de los documentos que ésta presentara a la OCIF el 11 de septiembre de 2024 y requiriendo ciertos documentos e información adicional.

4. El 8 de octubre de 2024, JIC presentó a la OCIF su respuesta a la carta de 1 de octubre de 2024.

5. Posteriormente y como parte del proceso de renovación de licencia, el 20 de diciembre de 2024, la OCIF emitió y notificó a JIC el "Notice of Denial of Renewal of License" (en español nos referiremos a ese documento como la "Denegación de Renovación" o "Notificación", la cual se adopta y se incorpora en su totalidad en esta Resolución. [...]

6. El término que tenía JIC para presentar a la OCIF la moción de reconsideración venció el 9 de enero de 2025. Sin embargo, el 10 de enero de 2025, la representación legal de JIC solicitó a la OCIF una prórroga de diez (10) días para presentar dicha moción. El 13 de enero de 2025, la OCIF concedió la prórroga solicitada.

7. Así las cosas, el 16 de enero de 2025, JIC presentó la Moción de Reconsideración....

La OCIF declaró No Ha Lugar la solicitud de reconsideración. En esencia, la OCIF reiteró que JIC incurrió en múltiples violaciones a la Ley 273-2012, *supra*. En efecto, la OCIF determinó que al JIC cesar operaciones desde el 1 de noviembre de 2023, no llevó a cabo los negocios como entidad financiera internacional de forma continua según exige la ley. Por otra parte, señaló que la denegatoria de renovación de licencia es el mecanismo que provee la Ley 273-2012, *supra*, para los casos de renovación que no cumplen con los

requisitos mínimos en ley, por lo que esta no es una medida extrema, sino la autorizada por ley. A su vez, distinguió el procedimiento a seguir cuando la licencia es revocada, suspendida o cancelada, en el que procede notificación y vista. Destacó que dicho requisito no es aplicable a los casos de denegatoria, por lo que el remedio que asistía a JIC, ante su inconformidad con la denegatoria, era la solicitud de reconsideración. Por último, la OCIF enfatizó que la denegatoria de renovación de la licencia fue el resultado de un análisis e investigación realizada que reflejó que JIC incurrió en un patrón de violaciones e inconsistencias con las leyes aplicables, lo que no le brindó confianza ni le permitió determinar que JIC operará la entidad financiera internacional de manera honrada, justa y eficiente para alcanzar los propósitos de la Ley. Por ello, declaró No Ha Lugar la solicitud de reconsideración y mantuvo la denegatoria de la renovación de licencia.

Inconforme con el dictamen, JIC acudió ante nos y formuló los siguientes señalamientos de error:

> **Primer Error:** Erró la OCIF al violar el debido proceso de ley de JIC al determinar que a la denegatoria de renovación de licencia de una entidad financiera internacional no le aplican el derecho a vista conferida por el Artículo 17 (a) de la Ley 273-2012.

> **Segundo Error:** Erró la OCIF al elegir la sanción más severa para JIC sin considerar todos los atenuantes provistos ni la totalidad de las circunstancias, resultando en la denegación de renovación de licencia.

En síntesis, JIC alegó que la OCIF le violentó el debido proceso de ley al denegarle la solicitud de licencia, sin notificación y vista previo a la denegatoria. Arguyeron que el efecto de la denegatoria de su licencia es el equivalente a una revocación, por lo que aplica el requisito de notificación y vista consignado en el Art. 17(a) de la Ley Núm. 273-2012, *supra*.

El 11 de abril de 2025, la OCIF presentó *Alegato en oposición a recurso de revisión de decisión administrativa* solicitando que

confirmemos la *Resolución* recurrida, toda vez que conforme lo establecido en la Ley Núm. 273-2012, *supra,* el lenguaje es claro en que, ante la denegatoria de una renovación de licencia, procede una solicitud de reconsideración y no una vista. Asimismo, destacó las irregularidades en que incurrió JIC Bank para que procediera dicha denegatoria.

## II.

### A.

En nuestro ordenamiento jurídico es doctrina reiterada que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Es conocido que los tribunales están llamados a concederles amplia deferencia a las agencias administrativas, ello, en vista de que los organismos administrativos cuentan con la experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[9]

Como resultado, a su vez, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[10]

Así, en cuanto a las determinaciones de hecho que realiza una agencia, el Tribunal Supremo ha resuelto que los tribunales revisores tienen que sostenerlas si se encuentran respaldadas por evidencia sustancial que surja del expediente administrativo al ser considerado en su totalidad.[11] Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[12] Por lo

---

[9] *Moreno Lorenzo y otros v. Depto. Fam.,* 207 DPR 833, 839 (2021), citando *OCS v. Universal,* 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. De Carolina,* 185 DPR 800 (2012); *Pagán Santiago, et al. V. ASR,* 185 DPR 341, 358 (2012).
[10] *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 215 (2012).
[11] *Pacheco v. Estancias,* 160 DPR 409, 432 (2003).
[12] *Rolón Martínez v. Superintendente,* 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE,* 188 DPR 252, 277 (2013); *Otero v. Toyota,* 163 DPR 716, 728-729 (2005).

tanto, la parte afectada deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial.[13] En fin, el tribunal debe limitar su intervención a evaluar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo.[14]

El Tribunal Supremo ha expresado en reiteradas ocasiones que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente.[15] No obstante, recientemente en *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, resuelto el 21 de mayo de 2025, señaló que esta consideración por parte de los tribunales no equivale a una renuncia de la función revisora. Ante ello, el Alto Foro nos invita a no abdicar las funciones judiciales. Entiéndase, que no nos convirtamos en autómatas obligados a respetar ciegamente las determinaciones de los foros administrativos, particularmente cuando se tratan de conclusiones de derecho. En otras palabras, los tribunales no tienen que necesariamente darle deferencia a la interpretación de derecho que haga una agencia.[16]

Por consiguiente, la revisión de una decisión administrativa se circunscribe a evaluar si la actuación de la agencia fue razonable y dicha deferencia solo puede ceder al escrutinio judicial cuando esté presente alguna de las siguientes situaciones: (1) cuando la decisión no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley; y (3)

---

[13] *Otero v. Toyota,* supra, pág. 728.
[14] *Íd.*
[15] *Fuentes y otros v. ARPe,* 134 DPR 947 (1993)
[16] *Vázquez v. Consejo de Titulares,* supra, citando a *Loper Bright Enterprises v. Raimondo,* ___ U.S. ___, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024).

cuando ha mediado una actuación ilegal o una decisión carente de una base racional.[17]

Por último, reiteramos que la intervención judicial en las determinaciones administrativas debe ocurrir cuando la agencia haya actuado de forma arbitraria, ilegal o irrazonable.[18]

A la luz del marco legal esbozado, podemos colegir que el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas.[19]

**B.**

En virtud de la Ley Número 4 de 11 de octubre de 1985, según enmendada, (Ley 4-1985), conocida como la *Ley de la Oficina del Comisionado de Instituciones Financieras,* se creó la Oficina del Comisionado de Instituciones Financieras, con la responsabilidad primordial de fiscalización y supervisión de las instituciones financieras que operen o hagan negocios en Puerto Rico.[20]

A tenor con el Artículo 10 de la Ley 4-1985, *supra,* la Legislatura delegó en el Comisionado de la referida agencia, el poder y la autoridad para, entre otros asuntos,

> Interponer cualesquiera remedios, acciones o procedimientos legales que fueran necesarios o convenientes para hacer efectivos los propósitos de esta ley o cualquier otra ley o reglamento, cuyo cumplimiento o fiscalización le haya sido asignada, ya sea representado por sus abogados o por el Secretario de Justicia, previa solicitud a tales efectos.
>
> [...]

---

[17] *OCS v. CODEPOLA,* 202 DPR 842 (2019).

[18] *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 187 (2009).

[19] *Batista de Nobbe v. Jta. Directores,* 185 DPR 206 (2012); *Asoc. FCIAS. V. Caribe Specialty II,* 179 DPR 923, 940 (2010), citando a: *Mun. De San Juan v. J.C.A.,* 149 DPR 263, 279–280 (1999); *Pacheco v. Estancias, supra.*

[20] Artículo 3, 7 LPRA sec. 2003.

Llevar a cabo toda clase de estudios e investigaciones sobre asuntos que afecten a cualquier rama de la industria bancaria, financiera y valores para los cuales podrá requerir la información que sea necesaria, pertinente y esencial para lograr tales propósitos; podrá requerir o permitir a cualquier persona presentar una declaración por escrito, bajo juramento o en cualquier otra forma, según el Comisionado determine, relativa a los hechos y circunstancias concernientes al asunto que se va a estudiar o investigar.[21]

Por otra parte, la Ley Número 273 de 25 de septiembre de 2012, conocida como la *Ley Reguladora del Centro Financiero Internacional*, (Ley 273-2012)[22] fue creada para reglamentar la organización y operación de entidades financieras internacionales en Puerto Rico autorizadas por la Oficina del Comisionado de Instituciones Financieras, proveer beneficios contributivos, permitir la concesión de decretos, establecer penalidades; y otros fines relacionados. Esta le otorga al Comisionado la facultad de revisar y llevar a cabo investigaciones con respecto a todas las solicitudes de licencias para operar entidades financieras internacionales o para el cambio de control de estas; aprobar, conceder aprobación condicionada o denegar solicitudes de permisos y licencias para operar entidades financieras internacionales.[23]

En lo aquí pertinente, el Artículo 6 establece lo concerniente a la determinación del Comisionado para expedir o no licencia para operar como entidad financiera internacional. El mismo lee como sigue:

(a) La determinación del Comisionado de expedir o no una licencia para operar una entidad financiera internacional es una facultad **enteramente discrecional** del Comisionado, en donde éste deberá ponderar el mejor interés de Puerto Rico y Estados Unidos de prevenir el lavado de dinero y eliminar el financiamiento del terrorismo, y del público en general, la protección de los depositantes o inversionistas prospectivos de la entidad financiera internacional propuesta, y la política pública del Gobierno de Puerto Rico, al igual que los intereses de los proponentes. A su discreción, y bajo los términos y condiciones que

---

[21] Artículo 10 a, incisos 4 y 12 (i), 7 LPRA sec. 2010.
[22] 7 LPRA, sec. 3081 et seq.
[23] Artículo 3 a, incisos (4) y (5), 7 LPRA sec. 3082.

entienda necesarios, según sean consignados en una determinación administrativa a tales efectos, el Comisionado podrá expedir a los proponentes una licencia para operar una entidad financiera internacional al recibo de:

[...]

(6) Una declaración jurada ante notario público por el secretario de la junta de directores o la persona que actúe en una capacidad similar de la entidad financiera internacional o de la persona de la cual la entidad financiera internacional será una unidad, a los efectos de que la entidad financiera internacional ha cumplido con lo estipulado por esta Ley y los Reglamentos del Comisionado o las cartas circulares o documentos guía aplicables a las EFIs y que está lista para comenzar operaciones; **no se habrá de expedir una licencia si el Comisionado cree o tiene razones para creer que ha ocurrido por parte de los proponentes una violación de lo estipulado por esta Ley o los Reglamentos del Comisionado o las cartas circulares o documentos guía aplicable a las EFIs.**

(7) **Como requisito para obtener una licencia, además del capital inicial pagado, toda entidad financiera internacional que se organice a partir de la vigencia de esta Ley deberá poseer por lo menos un millón dólares ($1,000,000) en activos libres de gravámenes o garantías financieras aceptables... .**

**Los activos libres de gravámenes serán certificados de depósito emitidos a favor del Comisionado por bancos comerciales o cooperativas de ahorro y crédito autorizadas para hacer negocios en Puerto Rico o, mediante la previa autorización escrita del Comisionado, por otra institución financiera que haga negocios en Puerto Rico con autorización para recibir depósitos, tales como una entidad bancaria internacional organizada bajo la Ley Núm. 52 de 11 de agosto de 1989, según enmendada, conocida como "Ley Reguladora del Centro Bancario Internacional", o una EFI. Los activos libres de gravámenes deberán estar físicamente localizados en Puerto Rico y estarán sujetos a los requisitos que con respecto a los mismos se provean por los Reglamentos del Comisionado, las cartas circulares, o documentos guía aplicables a las EFIs;**

[...]

El certificado de depósito podrá registrarse, en cuanto a su principal, a nombre de la entidad financiera internacional y deberán acompañarse con un endoso separado a favor del Comisionado, en el cual se describan el certificado de depósito

y su pignoración a favor del Comisionado. Dicho certificado de depósito no podrá retirarse sin la autorización expresa del Comisionado. El Comisionado podrá requerir a una entidad financiera internacional la presentación de una cantidad de activos libres de gravámenes mayor siempre que se presente cualquier reclamación ante los activos libres originalmente depositados a favor del Comisionado....

(Énfasis nuestro).

A su vez, el inciso (d) del citado artículo expone lo referente al proceso de renovación de licencia. Este establece lo siguiente:

(1) Cada licencia permanecerá en vigor por el periodo de un año o hasta el aniversario de haberse expedido la misma.

(2) Toda solicitud de renovación de licencia deberá presentarse dentro de los treinta (30) días anteriores a la fecha de expiración de cada licencia. La misma deberá contener:

(i) Una descripción de cualquier cambio material en la información suministrada al Comisionado en la solicitud de licencia inicial o en solicitudes anteriores de renovación de licencia;

[...]

(v) Un informe de un auditor independiente donde opine sobre la efectividad de los programas de cumplimiento de la entidad con BSA y OFAC y el cumplimiento de dichos programas con la reglamentación aplicable.

(vi) Aquella otra información que sea requerida por el Comisionado, los Reglamentos del Comisionado, las cartas circulares o documentos guía aplicables a las EFIs.

(3)     El Comisionado podrá extender el período para la renovación por justa causa. Si el concesionario no radica la solicitud de renovación, no evidencia que mantiene el capital requerido, no presenta la declaración jurada o el informe del auditor o no paga los derechos aplicables en el término concedido o durante el tiempo adicional que el Comisionado autorice, si alguno, se entenderá que ha renunciado a la licencia para operar la entidad financiera internacional, y no podrá continuar operando el negocio, procediéndose entonces a la entrega de la licencia y la liquidación voluntaria de la entidad financiera internacional, según dispuesto en el Artículo 18(b) de esta Ley.

(4) Toda entidad financiera internacional habrá de acompañar su solicitud de licencia, o solicitud de renovación de licencia, con una declaración jurada firmada por el principal oficial ejecutivo de la institución certificando su cumplimiento con las disposiciones de BSA y con la normativa de OFAC que por esta Ley se reitera son aplicables a las entidades financieras internacionales, y certificando que la entidad financiera internacional se encuentra "well capitalized", conforme a los estándares establecidos en los reglamentos federales de las Agencias Supervisoras, según sean aplicables a base de las actividades que lleva a cabo la entidad financiera internacional, o aquellos niveles de capital dispuestos en los Reglamentos del Comisionado, en las cartas circulares o documentos guía aplicables a las EFIs. Entre otras cosas, la antedicha declaración hará referencia a los procedimientos y sistemas que la institución ha adoptado para dar cumplimiento a las disposiciones de BSA, según apliquen a las actividades financieras llevadas a cabo por la entidad financiera internacional. La declaración certificará también las gestiones de la gerencia de la institución relacionadas con la implementación del programa de cumplimiento con BSA, según aplique a las actividades financieras llevadas a cabo por la entidad financiera internacional, y que han adoptado las políticas y procedimientos necesarios en el negocio para cumplir y están cumpliendo con lo dispuesto por la OFAC y las Agencias Supervisoras aplicables.

[...]

En cuanto al poseedor de una licencia para operar como entidad financiera internacional, el inciso (f) del Artículo 6 dispone que,

Todo poseedor de licencia de una entidad financiera internacional otorgada bajo las disposiciones de esta Ley deberá:

(1) Adoptar por escrito las políticas y los procedimientos necesarios para asegurar que la entidad financiera internacional cumpla con las leyes locales y federales aplicables a la entidad, según sus actividades autorizadas, incluyendo, entre otras, esta Ley, el Bank Secrecy Act, el USA Patriot Act y el AMLA;

**(2) Cumplir fielmente con todas las leyes locales y federales aplicables a las actividades autorizadas de la entidad financiera internacional y con los reglamentos, guías o cartas circulares aplicables a la entidad, incluyendo, entre otras, esta Ley,**

**las disposiciones del Bank Secrecy Act, el USA Patriot Act y el AMLA.**

(3) Someter los informes de transacciones monetarias y de actividad sospechosa, según sean requeridos por el Bank Secrecy Act, el USA Patriot Act o el AMLA.

(4) Adoptar las normas y los procedimientos necesarios para cumplir con lo dispuesto por la OFAC, según aplique al tipo de actividades financieras llevadas a cabo por la entidad financiera internacional.

(Énfasis nuestro).[24]

En lo pertinente al caso ante nos, el Art. 6(g) de la Ley Núm. 273-2012, *supra*, dispone lo siguiente:

Además de lo dispuesto en el Artículo 6 (a) de esta Ley, el Comisionado podrá denegar la otorgación o renovación de una licencia para operar como entidad financiera internacional cuando, como resultado de su investigación, concluya que:

(1) La responsabilidad financiera, experiencia, carácter y aptitud general de los proponentes no le brindan confianza ni le permiten determinar que los mismos operarán la entidad financiera internacional de manera honrada, justa y eficiente para alcanzar los propósitos de esta Ley;

(2) Los proponentes o la entidad financiera internacional no han cumplido con alguno de los requisitos establecidos en esta Ley para la obtención o renovación de una licencia;

(3) Los proponentes o la entidad financiera internacional sometieron información falsa, incorrecta o engañosa en su solicitud

[...]

(7) Los proponentes o la entidad financiera internacional no han cumplido con la entrega de cualquier pago, documento o información, según sea requerido por la OCIF y que no sea objeto de algún procedimiento adjudicativo.

---

[24]Cónsono con lo anterior, el Art. 6(3) del *Reglamento Para Implantar las disposiciones de la Ley Núm. 52 conocida como "Ley Reguladora del Centro Bancario Internacional", según enmendada por la Ley Número 121 de 11 de agosto de 1996* (Reglamento Núm. 5653), Comisionado de Instituciones Financieras, pág. 10, expresa que toda persona jurídica que desea solicitar poder ejercer en Puerto Rico como entidad bancaria internacional, debe cumplir con los formularios y solicitud que ha establecido el Comisionado debidamente juramentada por un Notario autorizado en Puerto Rico.

En lo aquí atinente, el acápite 11 dispone que un proponente a quien se le haya **denegado** la licencia podrá solicitar reconsideración al Comisionado dentro de los veinte (20) días siguientes a la notificación de denegación.[25]

Por otro lado, el Artículo 17(a) de la Ley Núm. 273-2012, *supra*, estatuye el procedimiento de **revocación**, **suspensión** o **renuncia** de licencia. En específico, este dispone que,

La licencia expedida bajo el Artículo 6 de esta Ley estará **sujeta a ser revocada, cancelada o suspendida** por el Comisionado, **previa notificación y vista** con arreglo al reglamento provisto en el Artículo 20 de esta Ley, si:

(1) una entidad financiera internacional, o la persona de la cual dicha entidad financiera internacional es una unidad, contraviene o no cumple con cualquiera de las disposiciones de esta Ley, cualquier Reglamento del Comisionado, cartas circulares, documentos guía aplicables a las EFIs, cualquier orden emitida por el Comisionado o acuerdos de entendimiento establecidos de conformidad con esta Ley, o cualquiera de los términos y condiciones de la licencia para operar una entidad financiera internacional;

(2) una entidad financiera internacional no paga el cargo anual por licencia;
(3) el Comisionado encontrase que el negocio o asuntos de una entidad financiera internacional son conducidos en una manera inconsistente con el interés público; o

(4) si determinare que existe algún hecho que de haber existido o haberse conocido al momento en que se expidió o renovó la licencia hubiere sido causa suficiente para denegar la misma, o si descubre que la entidad financiera internacional ha sometido información falsa, incorrecta, o engañosa, la OCIF llevará a cabo las acciones relativas a la revocación, cancelación o suspensión de licencia conforme a los poderes y facultades que le confiere la Ley Núm. 4 y a tenor con la LPAU.

(Énfasis nuestro).[26]

---

[25] Luego de la investigación requerida y el pago de los gastos de investigación, el Comisionado en su discreción denegará o aprobará el permiso para organizar una entidad bancaria internacional. Art. 6(4) del Reglamento Núm. 5653, pág. 11.
[26] En caso de que el Comisionado suspenda o revoque un permiso por causa justificada, entonces el solicitante podrá solicitar una vista adjudicativa. Art. 6 (7) del Reglamento Núm. 5653, pág. 12.

En ese sentido y, en lo aquí pertinente, el Artículo 20 de la citada ley, establece y distingue cuál es el remedio que tiene una parte para impugnar la determinación del Comisionado. El tipo de remedio dependerá si se trata de una **denegación**, o si se trata de una **revocación** o **suspensión** de licencia.[27] En el caso de **denegación**, el remedio disponible es a través de la presentación de una moción de reconsideración. En cambio, si se trata de una **revocación** o **suspensión**, se dispondrá mediante procedimiento de adjudicación en virtud del reglamento aplicable.[28]

Con el marco legal anteriormente expuesto, estamos en posición de resolver.

## III.

Por estar estrechamente relacionados, discutiremos los señalamientos de error en conjunto. En su recurso JIC alega que la OCIF incidió al no concederle una vista y notificación previo a denegar la renovación de licencia. Lo anterior, porque entiende que la denegatoria tuvo el efecto de revocar o suspender su licencia, por lo que le asiste el derecho de notificación y vista que dispone el Artículo 17(a) de la Ley 273-2012, *supra*. Añade que, ante las circunstancias del caso, la OCIF debió considerar los atenuantes

---

[27] En específico, el Artículo 20 de la Ley 273-2012, *supra,* establece lo siguiente:

> Todo lo relativo a la **denegación** de permisos para organizarse o de licencia en su origen, así como la revisión de las multas impuestas mediante exámenes **se llevará a cabo a través de un proceso de reconsideración mediante la presentación de la correspondiente moción de reconsideración** ante el Comisionado en el término de veinte (20) días contados a partir de la fecha de notificación de la determinación del Comisionado. Si dentro del término de (15) días desde su presentación la OCIF la deniega o rechazare de plano la reconsideración, la parte perjudicada tendrá un término de treinta (30) días para solicitar revisión ante el Tribunal de Apelaciones. Todo lo relativo a la **revocación** o **suspensión** de licencias se dispondrá mediante el Reglamento 3920 de 23 de junio de 1989, conocido como "Reglamento para Reglamentar los Procedimientos de Adjudicación bajo la Jurisdicción de la Oficina del Comisionado de Instituciones Financieras" *[Nota: Enmendado 7403]* o cualquiera que le sustituya o enmiende, promulgado por el Comisionado conforme a lo dispuesto en la LPAU o cualquier otra ley que la sustituya. 7 LPRA § 3099. (Énfasis nuestro).

[28] *Id.*

provistos y no recurrir a la "sanción más severa" de denegar la renovación. No le asiste la razón. Veamos.

De un examen detenido del recurso, surge que la OCIF actuó de conformidad con las facultades que le fueron conferidas en virtud de su ley habilitadora, específicamente el Artículo 6(g)(11), *supra*. Desde la presentación de la solicitud de renovación de licencia, **JIC incumplió con la presentación de los documentos requeridos**. Aun así, la OCIF le concedió a JIC oportunidad para presentar la documentación que faltaba y exponer las razones por las cuales no había cumplido con los requisitos de ley, según requeridos en la comunicación del 1 de octubre de 2024.[29] A pesar de las oportunidades concedidas, JIC no pudo presentar prueba a su favor que justificara su incumplimiento con las distintas disposiciones legales de la Ley 273-2012, *supra,* y demás leyes y reglamento aplicables. Conforme expusimos anteriormente, estos establecen que la determinación del Comisionado de expedir o no una licencia para operar una entidad financiera internacional es una facultad enteramente discrecional del Comisionado. Precisamente en el ejercicio de su discreción, el Comisionado, ante los crasos incumplimientos de JIC con los requisitos de ley, determinó denegar la renovación de licencia. Ante dicha denegatoria, de JIC estar inconforme, el mecanismo que por ley le asistía era la presentación de una solicitud de reconsideración, que de hecho, también la presentó expirado el término del 20 días. En ese sentido, resulta preciso señalar que la denegatoria de OCIF del 20 de diciembre de 2024, no limita que JIC en un futuro pueda solicitar nuevamente la renovación en cumplimiento con la Ley Núm. 273, *supra.*

Por otra parte, que las circunstancias del caso no reflejan las "atenuantes" que JIC alega. Por el contrario, lo que surge

---

[29] *JIC International, Inc. (IFE-31(/ Request for information regarding licence renewal,* Apéndice del recurso, pág 147-154.

diáfanamente es que JIC incurrió en un patrón de violaciones con los requisitos establecidos por ley que no brindaron confianza al Comisionado para conceder la renovación de licencia. Lo anterior, está respaldado por la evidencia sustancial que surge del expediente ante nuestra consideración. En su recurso, JIC no demostró que la OCIF haya actuado de forma arbitraria, ilegal o irrazonable. Por ello, la determinación administrativa debe sostenerse.

En vista de lo antes expuesto, procede la confirmación de la resolución recurrida.

### IV.

Por los fundamentos antes expuestos, confirmamos la *Resolución* recurrida.

**Notifíquese.**

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Sánchez Ramos disiente con voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| JIC BANK INTERNATIONAL, INC.<br><br>Recurrente<br><br>v.<br><br>OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS<br><br>Recurrida | KLRA202500127 | Revisión administrativa procedente de la Oficina del Comisionado de Instituciones Financieras<br><br>Sobre:<br>Denegación de Renovación de Licencia EFI-31 |
|---|---|---|

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

## VOTO DISIDENTE DEL JUEZ SÁNCHEZ RAMOS

Procedía la revocación de lo actuado por la agencia recurrida ("OCIF") y la devolución del asunto para la celebración de una vista evidenciaria ante dicho foro, para así brindar a la recurrente las garantías procesales requeridas por ley y por los principios más fundamentales del debido proceso.

Contrario a lo que plantea OCIF, no es solamente cuando se suspende o revoca una licencia que dicha agencia viene obligada a conceder una vista adjudicativa si la parte afectada lo solicita. También está obligada a hacerlo cuando deniega una licencia o cuando, como sucedió aquí, deniega la renovación de una licencia.



Ello se desprende de la Sección 5.4 de la Ley 38-2017, la cual explícitamente dispone que cuando una agencia "deniegue la concesión de una licencia", la parte afectada "tendrá derecho a impugnar la determinación de la agencia por medio de un procedimiento adjudicativo". 3 LPRA sec. 9684. Esta disposición prevalece sobre cualquier disposición en contrario en la Ley 273-2012.

En este caso, surge claramente del récord que la determinación recurrida dependió, al menos parcialmente, en unas

determinaciones fácticas adoptadas por la OCIF, pero las cuales son disputadas por la parte recurrente. Por tanto, era esencial, para cumplir con las garantías mínimas del debido proceso, así como con lo dispuesto en la Ley 38-2017 ("LPAU"), que se le brindara la oportunidad a la recurrente de impugnar estas determinaciones a través de un proceso adjudicativo imparcial que incluyese la oportunidad de ofrecer prueba.

En este caso, de forma similar a lo que ocurrió en *Karina's Café, Inc. v. Municipio*, 2025 TSPR 33, la OCIF "no proveyó las garantías mínimas del debido proceso de ley que imperan en nuestro ordenamiento". La recurrente en este caso "tenía derecho a comparecer ante un juzgador imparcial, a ser escuchada y confrontar la prueba en su contra" y "debía poder solicitar la celebración de una vista administrativa ..." *Íd.* "A su vez, [OCIF] tenía el deber de así notificárselo para que pudiera ejercer ese derecho." *Íd.* Al igual que sucedió en dicho caso, "la ausencia de una vista administrativa y la falta de garantías del debido proceso de ley imposibilitaron" que este Tribunal pudiese ejercer "su función revisora sobre los méritos" de la denegatoria de renovación de licencia. *Íd.*

Por los anteriores fundamentos, respetuosamente disiento.

En San Juan, Puerto Rico, a 30 de junio de 2025.

ROBERTO SÁNCHEZ RAMOS
Juez de Apelaciones